COURT OF APPEALS OF VIRGINIA

Present:    Judges Huff, Chafin and Decker
Argued at Richmond, Virginia


THEA RACHEL ANTHONY

                                                            OPINION BY
v.        Record No. 1270-13-2            JUDGE MARLA GRAFF DECKER
                                                            MARCH 4, 2014
PAUL SKOLNICK-LOZANO


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Jason P. Seiden (Michie Hamlet Lowry Rasmussen & Tweel, PLLC,
on briefs), for appellant.

Steven S. Biss for appellee.


        Thea Rachel Anthony (the wife) appeals a final order of the circuit court awarding

equitable distribution of property.  On appeal, she argues that the circuit court erred by awarding

Paul Skolnick-Lozano (the husband) $14,000 for reimbursement of his contribution to the

purchase of the marital residence.  The husband counters that the circuit court correctly applied

Code § 20-107.3(A)(3)(g) in reimbursing him the amount that he contributed before the marriage

to buy the marital home.  The husband assigns as cross-error the circuit court's ruling that there

was no resulting trust.

        We hold that although the circuit court properly considered the husband's pre-marital

contribution eligible for reimbursement, the husband failed to meet his burden of proof as to the

value of his contribution as of the date of the evidentiary hearing.  We further hold that the

circuit court did not have the authority to declare a resulting trust over the wife's separate

property.  Finally, we deny the wife's request for costs incurred in this matter.  Accordingly, we

reverse and remand for further proceedings consistent with this opinion.

I.  BACKGROUND

The parties married on February 6, 2004.  They separated in 2011, and the husband filed for divorce.  Much of the equitable distribution hearing on divorce was devoted to determining the parties' respective interests in a six-acre piece of real property.  The purchase occurred before the parties married.  The property contained a main house, a workshop, and a cottage.  At the time of purchase, the parties intended to occupy the main house together after their marriage.  The husband contributed $14,000 to the purchase price, and the wife contributed $15,000.  The property was titled in the wife's name.  The mortgage also was taken in the wife's name because she had established credit, while the husband had none.  The wife refinanced the property during the marriage, and that mortgage was also taken solely in her name.  Although the parties used their combined incomes to pay utilities and the mortgage, the wife's mother also periodically paid the monthly mortgage.  The cottage served as rental property.  The husband made improvements to both the main residence and the cottage.  The lease listed the husband and the wife as the landlords.  On April 5, 2011, a fire destroyed the marital residence on the property.  The wife collected the insurance proceeds.[1]

As part of the equitable distribution proceeding, the husband asked the circuit court to impose a resulting trust over the rent received from the cottage tenant.  The husband additionally asked that the rent and insurance proceeds be classified as marital property for the purposes of equitable distribution.  The wife argued that the husband did not adequately plead a resulting trust and, further, that such a trust was not allowed by law.  The wife asked the circuit court to find that the property was her separate property and not make any award to the husband.

The circuit court found that although the parties bought the property intending to use the house as their marital home, the property was the separate property of the wife.  The court also

_____

[1] The wife signed the check over to the mortgage company to pay the remainder of the mortgage, and then she received the remaining balance of the insurance payments.

found that the husband retraced his $14,000 contribution of his separate property to the marital home. The court noted that the parties did not offer any evidence of the contemporary value of the land. It nevertheless found that the combined property had a value of $145,000 at the time of the evidentiary hearing. This conclusion was based upon the sum that the wife paid the mortgage company to satisfy the balance of the mortgage after the fire. The circuit court ordered the wife to pay the husband $15,000.

Following the hearing, the court issued a letter opinion reversing its decision on the value of the property, because it had failed to take into consideration that the house had completely burned down. In a second letter opinion, the court reasoned that it could not determine the value of the wife's separate property and, therefore, could not make an award to the husband based on his personal contributions of time and money to the marital residence during the marriage. The court additionally ruled that no resulting trust existed because the husband did not assume "payment of all or part of the purchase money prior to or at the time of [the] purchase."

In the final divorce decree, the circuit court found that the husband retraced his pre-marital $14,000 contribution to the marital home. As part of the equitable distribution award, the court ordered the wife to reimburse the husband the $14,000, rather than the earlier $15,000 figure.

## II. ANALYSIS

On appeal of the circuit court's final decree, the wife asks this Court to reverse the portion of the divorce decree awarding the husband $14,000. She argues that the commingling occurred before the parties married and the husband failed to prove the value of the marital residence at the time of the evidentiary hearing. The wife additionally requests that we award her costs incurred in this matter. The husband contends that the circuit court erred by holding

that a resulting trust did not exist and, alternatively, that he sufficiently retraced his contribution

to the property and was thus entitled to the $14,000 awarded by the circuit court.

A.  Commingling Before Marriage

The circuit court awarded the husband $14,000 as reimbursement for his contribution to

the purchase of the marital home.  The wife argues that the court erred by reimbursing the

husband for separate assets commingled before the marriage, because Code § 20-107.3(A)

encompasses only commingling of separate property that occurs during the marriage.

"On appeal, a trial court's equitable distribution award will not be overturned unless the

Court finds 'an abuse of discretion, misapplication or wrongful application of the equitable

distribution statute, or lack of evidence to support the award.'"  Wiencko v. Takayama, 62

Va. App. 217, 229-30, 745 S.E.2d 168, 174 (2013) (quoting McIlwain v. McIlwain, 52 Va. App.

644, 661, 666 S.E.2d 538, 547 (2008)).  We review "pure questions of law concerning statutory

interpretation . . . de novo."  Gilliam v. McGrady, 279 Va. 703, 708, 691 S.E.2d 797, 799 (2010).

It is well settled that:

> When the language of a statute is unambiguous, we are bound by
> the plain meaning of that language.  Furthermore, we must give
> effect to the legislature's intention as expressed by the language
> used unless a literal interpretation of the language would result in a
> manifest absurdity.  If a statute is subject to more than one
> interpretation, we must apply the interpretation that will carry out
> the legislative intent behind the statute.

Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007)

(citations omitted).  Consistent with this standard, "'[t]he plain, obvious, and rational meaning of

a statute is to be preferred over any curious, narrow, or strained construction.'"  Meeks v.

Commonwealth, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007) (alteration in original) (quoting

Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998)).  In other words,

"[t]his Court must determine the General Assembly's intent from the words contained in the statutes." Tharrington v. Commonwealth, 58 Va. App. 704, 710, 715 S.E.2d 388, 390 (2011).

Code § 20-107.3(A) provides, in pertinent part, that "upon decreeing a divorce . . . the court . . . shall determine the legal title as between the parties, and the ownership and value of all property . . . of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property." The statute defines "all property . . . acquired by either party before the marriage" as separate property. Code § 20-107.3(A)(1). Further, the statute explains:

> When the separate property of one party is commingled into the separate property of the other party, or the separate property of each party is commingled into newly acquired property, to the extent the contributed property is *retraceable by a preponderance of the evidence* and was not a gift, each party shall *be reimbursed the value of the contributed property* in any award made pursuant to this section.

Code § 20-107.3(A)(3)(g) (emphasis added).

Code § 20-107.3(A)(3)(g) does not provide a time-frame limiting the instances of commingling that are entitled to reimbursement. In contrast, the General Assembly delineated time-frames of "before the marriage" and "during the marriage" in Code § 20-107.3(A)(1) and (A)(2), which define separate property and marital property. Likewise, Code § 20-107.3(A)(3)(a), governs income received from separate property or an increase in value of separate property occurring "during the marriage." Additionally, subsections (4) and (5) of Code § 20-107.3(A), which encompass separate and marital debt, specify "before the marriage," "after the date of the last separation of the parties," and "after the date of the marriage and before the date of the last separation of the parties."

Clearly, throughout this section of the Code, the General Assembly provides limiting language regarding specific time-frames that are applicable to different aspects of equitable

- 5 -

distribution of property. Thus, had the legislature intended to limit Code § 20-107.3(A)(3)(g) to commingling of separate property occurring "during the marriage," it would have done so. See Wiencko, 62 Va. App. at 231, 745 S.E.2d at 175 (limiting interpretation of Code § 20-107.3(E) to its actual text). Pursuant to the plain language of the statute, under Code§ 20-107.3(A)(3)(g), we hold that circuit courts may consider commingling of property that occurs before the marriage of the parties in fashioning an equitable distribution award.

The wife relies on Floyd v. Floyd, 17 Va. App. 222, 436 S.E.2d 457 (1993), for the proposition that circuit courts may consider only pre-marital contributions made to marital property, not pre-marital contributions made to separate property. In Floyd, this Court held that "Code § 20-107.3 does not prevent the trial court from considering premarital contributions to the acquisition or maintenance of property later deemed marital property in fashioning an equitable distribution." Id. at 226-27, 436 S.E.2d at 460. However, by holding in Floyd that circuit courts could consider pre-marital contributions to marital property, this Court did not exclude courts from considering pre-marital contributions made to property used as marital property but titled as separate property. Id. The record shows that the parties purchased the house with the intention of living in it as their marital home. They leased the cottage to a tenant as joint landlords. The husband made repairs to the home and cottage. Although the separate property did not actually transmute into marital property, the parties utilized it as marital property. Consequently, the property was accumulated by the parties for the benefit of the marriage.

We hold that Code § 20-107.3(A)(3)(g) encompasses commingling of separate property that occurs before the marriage. Thus, the circuit court did not err in finding that the husband commingled his separate property with the wife's separate property in acquiring the marital home and the related property.

- 6 -

B. Reimbursement Value

The wife contends that the circuit court erred in awarding the husband the $14,000 because he failed to prove the value of the property at the time of the evidentiary hearing. She argues that Code § 20-107.3(A)(3)(g)'s use of "the value" in instructing that "each party shall be reimbursed the value of the contributed property in any award made pursuant to this section" means the value of the contribution combined with the appreciation or depreciation of that property. The husband counters that the plain language of "value of the contributed property" means reimbursement of the exact amount contributed.

"[A] statute should be read and considered as a whole, and the language of a statute should be examined in its entirety to determine the intent of the General Assembly from the words contained in the statute." Dep't of Med. Assistance Servs. v. Beverly Healthcare, 268 Va. 278, 285, 601 S.E.2d 604, 607-08 (2004); see also Prince William Cnty. Sch. Bd. v. Rahim, 58 Va. App. 493, 500, 711 S.E.2d 241, 245 (2011), aff'd, 284 Va. 316, 733 S.E.2d 235 (2012). "Whenever possible . . . it is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal." Va. Elec. & Power Co. v. Bd. of Cnty. Supervisors, 226 Va. 382, 387-88, 309 S.E.2d 308, 311 (1983); see also Rice v. Rice, 49 Va. App. 192, 206, 638 S.E.2d 702, 709 (2006).

Although subsection (A)(3)(g) does not provide a method for calculating "the value of the contributed property," subsection (A) provides, in pertinent part:

> [T]he court, upon request of either party, . . . shall determine the legal title as between the parties, and the ownership and *value of all property*, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property in accordance with subdivision A 3 . . . . *The court shall determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue.*

Code § 20-107.3(A) (emphasis added).

- 7 -

Considering the separate subsections of Code § 20-107.3 together, we hold that when ordering reimbursement of contributed separate property under subsection (A)(3)(g), a court shall determine the value of the contributed property as of the date of the evidentiary hearing.[2] See, e.g., Oraee v. Breeding, 270 Va. 488, 498, 621 S.E.2d 48, 53 (2005) (construing together subsections A and B of Code § 8.01-581.18); Hart v. Hart, 27 Va. App. 46, 66, 497 S.E.2d 496, 505 (1998) (holding that in determining the value of a party's non-marital contribution to hybrid property under Code § 20-107.3(A)(3), the important factor "is the value that improvements add to the property, not their cost"). This interpretation makes good sense because reimbursing the husband the exact value of his contribution would not take into account any passive losses or gains. Ordering the precise reimbursement of the husband's $14,000 contribution would create a danger that the husband would either receive a windfall or suffer an unnecessary loss. A valuation date as of the hearing obviates these problems. Thus, we hold that the circuit court

_____

[2] We note that the proper interpretation of the term "value" as used in Code § 20-107.3(A)(3)(g) has been contemplated in a manner consistent with this holding:

> It is submitted that based upon the intent and language of the other subsections regarding commingling, and to have consistent statutory interpretations for each of the related subdivisions contained in the section, as well as promoting the policy of appreciation "attributable" to such contributions that is applied to other commingling fact patterns, . . . the better interpretation of the new term "value" should not [be] limited to the exact amount of the contribution itself, but should include passive gains or losses as applied to other contribution patterns with other marital property contributions. In fact, the new provision *does not* state that the reimbursement shall be limited to an amount "equal" to the value of said contributions. Therefore a liberal interpretation of such language is encouraged for consistency of statutory interpretation and policy considerations. The term "value" of said contribution should mean the amount of the contribution *plus or minus* growth or appreciation or other passive changes that have occurred to said contribution to the date of the hearing or other appropriate valuation date set by the court.

Peter N. Swisher, Lawrence D. Diehl & James R. Cottrell, Virginia Practice--Family Law: Theory, Practice and Forms § 11:5 (2013 rev. ed.).

misapplied the statute in concluding that ordering reimbursement under Code § 20-107.3(A)(3)(g) did not require a finding as to the value of the contributed property at the time of the hearing.

In this case, the husband, as the party who moved for equitable distribution, had the burden of proving the value of his contribution to the property. See Bowers v. Bowers, 4 Va. App. 610, 618, 359 S.E.2d 546, 551 (1987) (noting that the party who moved for equitable distribution "had the burden of proof on classification and valuation issues"). The husband's burden of proof was a preponderance of the evidence. See Code § 20-107.3(A)(3)(g) (providing that the contributed property must be "retraceable by a preponderance of the evidence" to merit reimbursement). "When the party with the burden of proof on an issue fails for lack of proof, he cannot prevail on that question." Bowers, 4 Va. App. at 617, 359 S.E.2d at 550.

The husband did not present sufficient evidence from which the circuit court could determine the value of the property at the time of the hearing. Although the purchase price was in evidence, the record also shows that a fire destroyed the main house. The evidence did not provide a basis for determining the value of the remaining property or whether the insurance proceeds fully compensated for the loss. Consequently, based on the limited evidence before it, the circuit court was unable to determine the value of the husband's contribution to the property at the time of the hearing and erred by ordering the wife to reimburse the husband the $14,000 that he contributed to the marital home. Accordingly, we reverse and remand the case on this issue for the entry of an order consistent with this opinion.

## C. Resulting Trust

The husband assigns as cross-error that the circuit court incorrectly ruled that he failed to prove a resulting trust. He argues that this Court should hold that there is a resulting trust and that he is a beneficial owner of one half of the property. The wife counters that the circuit court

erred in ruling on the matter at all because the husband failed to provide notice and the court

lacked the authority to consider the husband's resulting trust argument during an equitable

distribution hearing.  The wife further contends that the husband failed to prove a resulting trust

by clear and convincing evidence.

"'[W]e give deference to the trial court's factual findings and view the facts in the light

most favorable to the prevailing part[y,]' but we review the trial court's application of the law to

those facts *de novo*."  Tuttle v. Webb, 284 Va. 319, 324, 731 S.E.2d 909, 911 (2012) (emphasis

added) (quoting Caplan v. Bogard, 264 Va. 219, 225, 563 S.E.2d 719, 722 (2002)).

> A resulting trust is an indirect trust which arises from the
> intention of the parties, or the nature of the transaction.  It is not
> dependent on any express declaration of trust.  In order for a
> resulting trust to arise, the would-be beneficiary must pay for the
> property, or assume payment of all or part of the purchase money
> prior to or at the time of purchase, and have legal title conveyed to
> another without any mention of a trust in the conveyance.  In
> addition, he must have paid the purchase money as his own, and
> not as an agent of the title holder, nor as a loan to the latter.
> Finally, in instances where the would-be beneficiary has obligated
> himself to pay purchase money prior to or at the time of purchase,
> he must have upheld this commitment.

Tiller v. Owen, 243 Va. 176, 180, 413 S.E.2d 51, 53 (1992) (citations omitted).[3]

The key issue before the Court is whether under Code § 20-107.3, the circuit court had

the authority to declare a resulting trust.  "'A suit for divorce . . . does not involve an appeal to

---

[3] In Tiller, the parties lived together.  Tiller was the sole purchaser on the contract for the house and the only debtor to the mortgage.  However, Owen paid a significant amount toward the down payment and made some of the mortgage payments.  The Supreme Court held that a resulting trust did not arise because Owen was not at any point financially obligated on the house.  The Court explained, "Owen did not obligate himself to purchase all or part of the property in question.  He did not sign the sales contract or become obligated on the mortgage. Further, he signed no other documents binding him to pay all or part of the purchase."  Tiller, 243 Va. at 180, 413 S.E.2d at 54.  For examples of where the evidence sufficiently proved the existence of a resulting trust outside of the context of equitable distribution, see Morris v. Morris, 248 Va. 590, 449 S.E.2d 816 (1994), and Gifford v. Dennis, 230 Va. 193, 335 S.E.2d 371 (1985).

the general jurisdiction of the equity forum.'" Reid v. Reid, 245 Va. 409, 413, 429 S.E.2d 208, 210 (1993) (quoting McCotter v. Carle, 149 Va. 584, 592, 140 S.E. 670, 673 (1927)).

> As we have often said, jurisdiction in divorce suits is purely statutory. . . . Such jurisdiction of a court of equity does not inherently extend to the disposal of the personal property of the husband [or wife]. . . . And even though the court has jurisdiction of both the subject matter and the parties, a decree may nevertheless be void if "the character of the judgment was not such as the court had the power to render, or [if] the mode of procedure employed by the court was such as it might not lawfully adopt." Anthony v. Kasey, 83 Va. 338, 340, 5 S.E. 176, 177 (1887).

Watkins v. Watkins, 220 Va. 1051, 1054, 265 S.E.2d 750, 752-53 (1980) (citations omitted).

Code § 20-107.3 limits the circuit court's powers to divide property of the divorcing parties. Specifically with regard to separate property, Code § 20-107.3(C) states, "except as provided in subsection G, the court shall have no authority to order the division or transfer of separate property or marital property, or separate or marital debt, which is not jointly owned . . . ."[4] The statute also delineates the circuit court's power to divide or transfer jointly owned marital property. See Code § 20-107.3(C), (E), (G)-(H).

Thus, in Code § 20-107.3, the legislature addressed the division of property in an equitable distribution award without any provision for a resulting trust. Because "the jurisdiction of a court in equity is 'entirely statutory and limited' in divorce matters," we conclude that in the context of the equitable distribution proceeding, the circuit court was limited to application of equitable distribution principles and did not have the authority to declare a resulting trust or, along with it, that the husband was a beneficial owner of one half of the property. See Reid, 245 Va. at 414-15, 429 S.E.2d at 211 (quoting McCotter, 149 Va. at 592, 140 S.E. at 673) (holding that the circuit court did not have the statutory or inherent authority to order restitution in part

---

[4] Code § 20-107.3(G) does not pertain to this case, as it applies to pensions, profit-sharing plans, deferred compensation plans, retirement benefits, survivor benefit plans, and annuity plans.

because the statutes did not envision such an obligation); see also Watkins, 220 Va. at 1054-55, S.E.2d at 752-53 (holding that the circuit court's statutory power in a divorce suit did "not inherently extend to the disposal of the personal property" of a party).

The circuit court ruled that a resulting trust did not exist. However, that circuit court's authority in this case did not extend to considering whether a resulting trust existed. Therefore, the husband's assignment of cross-error must fail.[5]

## D. Appellate Costs

The wife asks for an award of "costs incurred in this matter." "'The appellate court has the opportunity to view the record in its entirety and determine whether [an] appeal is frivolous or whether other reasons exist for requiring additional payment.'" Wright v. Wright, 61 Va. App. 432, 470, 737 S.E.2d 519, 537 (2013) (quoting O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996)) (alteration in original). Having reviewed the entire record, we do not find a sufficient basis to warrant an award of costs. See, e.g., id. at 470, 737 S.E.2d at 537-38 (denying both parties' requests for attorneys' fees and costs on appeal). Therefore, we deny the wife's request for costs.

## III. CONCLUSION

We hold that the circuit court did not err in finding that the husband commingled his separate property with the wife's separate property as contemplated by Code § 20-107.3(A)(3)(g) with regard to the marital residence. We also hold, however, that the husband failed to meet his burden of proving the value of his pre-marital contribution to the wife's separate property. Further, we conclude that the circuit court did not have the authority under Code § 20-107.3 to

---

[5] In light of this holding, we do not consider the husband's challenge regarding the merits of the ruling that there was no resulting trust, nor do we reach the wife's argument that the husband insufficiently pleaded his claim of a resulting trust through his single mention of "resulting trust" in his affirmative defenses.

determine whether a resulting trust existed.  Finally, we deny the wife's request for costs incurred in this matter.

We reverse and remand for further proceedings consistent with this opinion, for the purpose of the circuit court entering an order removing the $14,000 award to the husband from the final award.

Reversed and remanded.