3 P.3d 128

2000-NMCA-044

STATE of New Mexico, ex rel., STATE HIGHWAY AND TRANSPORTATION DEPARTMENT OF NEW MEXICO, Petitioner,

v.

CITY OF SUNLAND PARK, Respondent–Appellant.

Paseo Del Norte Limited Partnership, a New Mexico limited partnership, Petitioner,

v.

City of Sunland Park, Respondent–Appellant,

v.

Board of County Commissioners of Doña Ana County, Intervenor–Appellee.

No. 19,570.

Court of Appeals of New Mexico.

Feb. 8, 2000.

Certiorari Denied, No. 26,262, May 25, 2000.

Patricia A. Madrid, Attorney General, William T. Moyers, Special Assistant Attorney General, Santa Fe, for Petitioner State of New Mexico.

Frank R. Coppler, Nancy E. Nickerson, Paul D. Mannick, Coppler & Mannick, P.C., Santa Fe, for Respondent–Appellant.

Donald M. Salazar, Serina M. Garst, Rubin, Katz, Salazar, Alley & Rouse, P.C., Santa Fe, for Petitioner Paseo del Norte Limited Partnership.

Thomas R. Figart, Doña Ana County Legal Department, Las Cruces, for Intervenor–Appellee.

*OPINION*

BUSTAMANTE, Judge.

{1} The City of Sunland Park (the City) appeals the district court's issuance of a permanent injunction ordering the City to either remove or abandon a pipeline it constructed on Doña Ana County (County) land to deliver water to land it sought to annex. The City makes numerous arguments on appeal, which can be roughly summarized as follows: (1) the district court lacked equity jurisdiction to hear and enter the injunction; (2) the requirements for issuing an injunction were not met; and (3) a municipality with the power of eminent domain cannot be considered a trespasser for purposes of entering an injunction. We determine that the district court had jurisdiction to hear the injunction but that the County did not demonstrate it would be irreparably harmed by the City's construction of the pipeline. We therefore reverse and remand with instructions that the district court withdraw the injunction.

**FACTS**

{2} In 1997, the City, acting on the petition of a nearby landowner, passed an ordinance seeking to annex approximately thirty-seven acres of land. The land the City sought to annex included that of the annexation petitioner, as well as certain public lands that lay between the City's existing boundary and the petitioner's land. Shortly after the City passed the ordinance, the New Mexico Highway and Transportation Department (the Highway Department) and Paseo Del Norte Limited Partnership (PDN) appealed the annexation to the Third Judicial District Court pursuant to NMSA 1978, § 3–7–17(C) (1998), and Rule 1–074 NMRA 2000. The Highway Department and the County subsequently moved to add the County as a party to the annexation appeal because of possible questions concerning the ownership of some of the public land included in the annexation. Over the City's objection, the district court granted the motion.

{3} For a more thorough discussion of the facts surrounding the annexation, *see State ex rel. State Highway & Transportation Department v. City of Sunland Park,* 1999–NMCA–143, 128 N.M. 371, 993 P.2d 85

(*State ex rel. Highway Dep't I* ). In that case we held that the County's motion to intervene was untimely and should not have been granted. *See id.* ¶ 11. We also held, however, that the attempted annexation was invalid because the City failed to comply with one of the relevant provisions of the Municipal Code having to do with the annexation of territory. *See id.* ¶¶ 17–25.

{4} Following passage of the annexation ordinance, but during the pendency of the appeal to district court, the City began constructing an underground pipeline to provide water service to the annexed land. The pipeline was to be composed of two sections: one section underlying an unused railroad bed and running from the City's existing water facility to State Highway 136, the other underlying the right of way along a portion of State Highway 136, adjacent to but outside a portion of the State Highway 136 right of way the City included in the annexation ordinance, and running to the land owned by the annexation petitioner. The City's effort to condemn a utility easement along the railroad bed was the subject of *City of Sunland Park v. Paseo Del Norte Ltd. Partnership,* 1999–NMCA–124, 128 N.M. 163, 990 P.2d 1286. Because the district court had not yet awarded damages, we concluded that the order appealed from was not final, and we dismissed for lack of appellate jurisdiction. *See id.* ¶¶ 11, 20. This appeal involves only the portion of the pipeline paralleling State Highway 136.

{5} Before beginning construction, the City applied for and was issued a permit by the Highway Department to construct the portion of the pipeline paralleling State Highway 136. The City then hired a private contractor to begin installing the pipeline. Soon thereafter, the Highway Department sought to revoke the permit. The City successfully moved to prevent the Highway Department from revoking the permit by obtaining a restraining order in the First Judicial District Court in Cause Number SF 97–2891(c). The Third Judicial District Court took judicial notice of that action in this case.

{6} Upon learning of the construction, the County, which by this time had been made a party to the appeal of the annexation, sought a temporary restraining order of its own to prevent the City from proceeding with construction of the pipeline pending resolution of the annexation appeal. In support of its position, the County argued that to allow Sunland Park to continue installing the pipeline "w[ould] prejudice the authority and prerogative of the County to serve the subject-matter property and surrounding area with water service if the annexation [were] not approved by the [district c]ourt." The district court granted the County's request, finding that "good cause exist[ed] for [a] Restraining Order." Several days later, following a hearing, the district court continued and modified the temporary restraining order until after the court heard and ruled on the merits of all of the issues before it. The district court specifically ordered that if the City chose to resume construction of the pipeline it would "assume[ ] the risk" that the court might "require [the City] to abandon or remove the pipeline in place."

{7} The district court held a hearing on both the annexation and pipeline construction issues on February 6 and February 11–13, 1998. The record reflects that the district court made sure to keep the testimony and argument on the two issues separate. Several months later the district court entered its order concerning the pipeline. It found that the County owned the right of way along State Highway 136, under which the City had begun constructing the pipeline. It also found that "[t]he County has no adequate remedy at law and w[ould] be irreparably harmed if the City's pipeline [were] completed and used to deliver water utilities under the City's plan because it would be disruptive of the County water and wastewater plans for the same area." Accordingly, the court made the injunction permanent but stayed it temporarily. The court ordered the City to, after the stay was lifted, "give the County notice that it ha[d] abandoned the pipeline or, alternatively, if the City ch[ose] to remove the pipeline, . . . [to] present the County with its plan of action to remove the pipeline[,] which removal [was to] take place within a reasonable time." It is from this order that the City appeals.

## DISCUSSION

### 1. Jurisdiction of the District Court to Issue the Injunction

#### A. Jurisdiction to Hear and Issue the Injunction in the Context of the Annexation Appeal

{8} The City first argues that the district court's jurisdiction was limited by Rule 1–074. Specifically, the City argues that the district court lacked jurisdiction to hear and issue the injunction because the scope of review at the hearing was limited by Rule 1–074 to the annexation appeal and because the County failed to file a proper pleading under either Rule 1–074 or Rule 1–003 NMRA 2000. We disagree.

{9} In essence, the City seems to be arguing that the district court could not exercise its appellate and original jurisdictions concurrently. Of course, we agree that under Rule 1–074 review of the annexation was limited "to consideration of whether it was enacted in accordance with the governing statute." *State ex rel. Highway Dep't I,* 1999–NMCA–143, ¶ 17, 128 N.M. 371, 993 P.2d 85. We see no reason why, however, under the facts and circumstances of this case, the district court could not at the same time exercise its equitable jurisdiction.

{10} The district courts of this State have broad jurisdiction—legal and equitable, original and appellate. *See* N.M. Const. art. VI, § 13; *Sims v. Sims,* 1996–NMSC–078, ¶ 27, 122 N.M. 618, 930 P.2d 153. As our Supreme Court noted in *Sims,* "Under our court rules, there is 'one form of action to be known as "civil action",' in which *all* claims may be joined and *all* remedies are available." *Id.* ¶ 27 (quoting Rule 1–002 NMRA 2000) (emphasis added). Moreover, "[e]quity favors the prevention of a multiplicity of actions, and the interposition of a court of equity may be invoked to prevent a multiplicity of actions." 27A Am.Jur.2d *Equity* § 23 (1996). Thus, "where a court of equity has all the parties before it, it will adjudicate upon all of the rights of the parties connected with the subject matter of the action, so as to avoid a multiplicity of suits." *Burnworth v. Hughes,* 234 Kan. 69, 670 P.2d 917, 922 (1983); *see also Lougee v. New Mexico Bureau of Revenue Comm'r,* 42 N.M. 115, 132, 76 P.2d 6, 16 (1938); *State ex rel. Stenberg v. Moore,* 253 Neb. 535, 571 N.W.2d 317, 322 (1997); 27A Am.Jur.2d *Equity* § 24 (discussing the factors courts consider in determining whether to exercise equity jurisdiction to avoid a multiplicity of suits); *id.* § 25 ("[T]here is no fixed number of actions which will constitute a multiplicity of suits so as to require or justify the assumption of equitable jurisdiction; it depends on the circumstances of the case whether equity will take jurisdiction."). Finally, "[a]bsent an abuse of discretion, we will not disturb the district court's exercise of its equitable jurisdiction on appeal." *Moody v. Stribling,* 1999–NMCA–094, ¶ 30, 127 N.M. 630, 985 P.2d 1210.

{11} We also note that "only if a *statute* so provides with express language or necessary implication will New Mexico courts be deprived of their inherent equitable powers." *Sims,* 1996–NMSC–078, ¶ 30, 122 N.M. 618, 930 P.2d 153 (discussing interrelation of equitable and statutorily provided remedies) (emphasis added). And the Rules of Civil Procedure themselves indicate that they "shall not be construed to extend or limit the jurisdiction of the district courts of the [S]tate." Rule 1–082 NMRA 2000. Thus, to the extent the City's argument can be understood to imply that Rule 1–074 was meant to deprive district courts of equitable jurisdiction in administrative appeals, it is incorrect.

{12} It is clear that, as a matter of judicial economy, the district court exercised its equitable jurisdiction to address an equitable issue involving the same parties and same general subject matter before it. Moreover, as we have noted, the court took care to keep testimony having to do with the appeal of the annexation separate from testimony having to do with the injunction. We therefore see no abuse of discretion in the district court's exercise of its equitable jurisdiction in the context of a Rule 1–074 case.

{13} The City next argues that the district court lacked jurisdiction because the County never filed proper pleadings; namely, the County never filed a complaint, *see* Rule 1–003, or a statement of appellate issues, *see* Rule 1–074(J). Again, we disagree.

{14} As a general proposition, the City is correct that a civil action is initiated by the filing of a complaint, as Rule 1–003 states. One need look no further than Rule 1–074 itself, however, to see that the filing of a complaint is not the only way to invoke the district court's jurisdiction: An aggrieved party seeking review of an administrative decision does not invoke the district court's jurisdiction by filing a complaint, but instead by filing a notice of appeal. *See* Rule 1–074(C). In this context it is too simplistic to say that the court lacked jurisdiction to hear the injunction because there was no "complaint" in the court file.

{15} We likewise do not view the County's failure to file a statement of appellate issues as a jurisdictional defect. Indeed, although the City couches its argument in terms of the district court's jurisdiction, the thrust of its argument is that it was prejudiced by the absence of a statement of appellate issues. It is clear, however, that the statement of appellate issues is designed to be a substitute for full briefing in a Rule 1–074 appeal. It is akin to the docketing statement in this Court, which a party files in advance of assignment of his case to one of the Court's three dispositional calendars, and which takes the place of full briefing when a case is decided on the Court's summary calendar. *Compare* Rule 1–074(K) (elements of a statement of appellate issues) *with* Rule 12–208(C) NMRA 2000 (elements of a docketing statement). *See also* Rule 12–210 NMRA 2000 (outlining this Court's calendaring procedure). Moreover, Rule 1–074(O) provides that parties to an administrative appeal to district court are to file briefs only when the court so directs, which it did in this case. The County complied by filing a brief that included a discussion of the propriety of an injunction. The City also filed a brief addressing not only what it perceived to be the procedural barriers to the district court hearing the injunction but also the merits of the injunction (in addition, of course, to the City's position on the annexation appeal). We agree that the procedural posture of the case below was unusual, perhaps even unorthodox. We are satisfied, however, that the issues were sufficiently well defined and joined to conclude that the City was not prejudiced in any way by the County's filing of a brief but not a statement of appellate issues. And again, we find no support for the proposition that the failure to file a statement of appellate issues in the context of a Rule 1–074 appeal constitutes a jurisdictional defect. We therefore conclude that the City's argument is without merit.

**B. The Absence of a Necessary Party**

{16} The City next argues that the district court lacked jurisdiction because a necessary party was absent below. The City points out that Jack Pickel, who was the annexation petitioner and who stood to receive water service upon completion of the pipeline, was not a party to the action for injunction. But the absence of an indispensable (let alone necessary) party is not considered a jurisdictional defect in New Mexico. *See Sims,* 1996–NMSC–078, ¶ 53, 122 N.M. 618, 930 P.2d 153. Moreover, where, as here, the allegedly necessary party knew of the litigation and even appeared as a witness yet chose not to participate, there is no reason to vacate the district court's order and force the parties to repeat the proceedings. *See C.E. Alexander & Sons, Inc. v. DEC Int'l, Inc.,* 112 N.M. 89, 92–93, 811 P.2d 899, 902–03 (1991). The City's argument that there was no procedural mechanism whereby Pickel could have joined the action for injunction is unpersuasive. As we have discussed, once the district court's equitable jurisdiction was properly invoked, the court had the ability to consider the rights of all of the parties who might have been affected by the injunction.

**2. Merits of the Injunction**

{17} As we have indicated, we review the district court's decision to grant equitable relief for an abuse of discretion. *See Moody,* 1999–NMCA–094, ¶ 30, 127 N.M. 630, 985 P.2d 1210. "Generally, we find an abuse of discretion only when the district court's decision is contrary to logic and reason. We examine the findings and determine if substantial evidence supports these findings; if it does, we will not find an abuse of discretion." *Id.* (citations omitted). "[E]quitable relief may not be granted where the

complainant has failed to produce sufficient evidence in support of his prayer for relief." *Tiller v. Owen*, 243 Va. 176, 413 S.E.2d 51, 53 (1992).

{18} "Generally, the remedy for alleviating an encroachment is the issuance of an injunction ordering removal of the encroaching structure." *Amkco, Ltd. v. Welborn*, 1999–NMCA–108, ¶ 14, 127 N.M. 587, 985 P.2d 757, *cert. granted*, 128 N.M. 150, 990 P.2d 824 (1999). But "[i]njunctions are harsh and drastic remedies which should issue only ... where there is a showing of irreparable injury for which there is no adequate and complete remedy at law." *Padilla v. Lawrence*, 101 N.M. 556, 562, 685 P.2d 964, 970 (Ct.App.1984); *accord Hill v. Community of Damien of Molokai*, 1996–NMSC–008, ¶ 51, 121 N.M. 353, 911 P.2d 861.

{19} The phrases "irreparable injury" and "no adequate and complete remedy at law" tend to overlap. An injury that is irreparable is without adequate remedy at law. *See Williams v. Compressor Eng'g Corp.*, 704 S.W.2d 469, 472 (Tex.App.1986). Thus, "[a]n 'irreparable injury' is an injury which cannot be compensated or for which compensation cannot be measured by any certain pecuniary standard." *Parkem Indus. Servs., Inc. v. Garton*, 619 S.W.2d 428, 430 (Tex.Civ.App.1981); *accord Armintor v. Community Hosp.*, 659 S.W.2d 86, 89 (Tex. App.1983); *see also Jessen v. Keystone Sav. & Loan Ass'n*, 142 Cal.App.3d 454, 191 Cal. Rptr. 104, 106 (1983). "The injury must be actual and substantial, or an affirmative prospect thereof, and not a mere possibility of harm." *Parkem Indus. Servs., Inc.*, 619 S.W.2d at 430 (citation omitted). It is not enough that the party seeking injunctive relief merely claim irreparable harm; he must come forth with evidence of the irreparability of his harm or inadequacy of any remedy. *See City of Las Cruces v. Rio Grande Gas Co.*, 78 N.M. 350, 352, 431 P.2d 492, 494 (1967) ("The question here is whether Rio Grande [Gas Company] has demonstrated that it will suffer an irreparable injury."); *Tom James Co. v. Mendrop*, 819 S.W.2d 251, 253 (Tex.App.1991); *Williams*, 704 S.W.2d at 472; *Texas Employment Comm'n v. Norris*, 636 S.W.2d 248, 253 (Tex.App.1982) (holding

in part that the "trial court abused its discretion in granting a temporary injunction in the absence of a showing that the plaintiff did not have an adequate remedy at law").

{20} Upon reviewing the evidence the County presented, we conclude that the County failed to show that it would be irreparably harmed and lacked any adequate remedy and, consequently, that the district court abused its discretion in enjoining the City's construction of the pipeline. Albert Racelis, the Assistant County Planner, testified that the County has a contract to serve the Santa Teresa Port of Entry with water through infrastructure built by the State, but he acknowledged that there were, at most, sixteen acre-feet of water available to the County to serve the Port of Entry and that it would take twenty-nine acre feet of water to serve it fully. He testified that the County had plans to expand the water facilities at the Port of Entry and that the planned expansion would run adjacent to and could serve the land the City sought to annex, but he did not know what the water needs were on those adjacent lands. The County entered into evidence resolutions its Commissioners had passed through the years indicating the County's intent to provide water service to unincorporated areas of the County. But Racelis testified that the County had neither customers nor a system for billing customers for domestic water.

{21} Based on the foregoing, the County's alleged harm—that is, the economic harm it would suffer if its plans to supply water to parts of the County were thwarted by the City's construction of a water system covering some of the same areas—is entirely too speculative to support the issuance of an injunction. *See Parkem Indus. Servs., Inc.*, 619 S.W.2d at 430. Racelis did testify that the County would lose a possible revenue source for recuperating money it had spent on developing a plan for a water system and would spend constructing a system, whenever construction might begin. Those costs are clearly quantifiable, though. *Cf. Armintor*, 659 S.W.2d at 89 (affirming issuance of injunction because decrease in quality of hospital's care absent the injunction could not be compensated). Evidence of those costs

would have helped to demonstrate the adequacy or inadequacy of any remedy the County would have at law. Yet the County presented no evidence of actual past or future losses. In fact, the County came perilously close to not showing any actual injury at all, much less irreparable injury. In short, the County's plans to supply water to its residents are too incomplete and indefinite to support injunctive relief. The district court abused its discretion in issuing the injunction. *See Rio Grande Gas Co.*, 78 N.M. at 353, 431 P.2d at 495 (affirming denial of injunctive relief because there was no showing that municipality's unlawful distribution of natural gas outside of statutorily limited service area harmed gas company on whose territory municipality's distribution was encroaching).

{22} We point out that the County indicated it had offered to purchase the pipeline the City had already laid. It could still seek to purchase the line, if it felt strongly about developing a water system in the area. In addition, Racelis testified that the County has an operating agreement with the water and sanitation district of Anthony, another municipality located in Doña Ana County, to help the County effectuate its water plans. There is no reason the County could not enter into a similar agreement with the City if it thought the area served by the City's pipeline were important to its plans.

■ {23} Finally, we acknowledge that under certain circumstances the continuing interference with another's rights in land might "render[ ] a remedy at law inadequate," such that an injunction is proper. *Kennedy v. Bond*, 80 N.M. 734, 738, 460 P.2d 809, 813 (1969). Here, although the City alleges that the County (and the State) took inconsistent positions regarding ownership of the right of way along State Highway 136, it does not challenge directly the district court's finding that the County owns the relevant portion of the right of way. That finding is therefore binding on appeal. *See Kruskal v. Moss*, 1998–NMCA–073, ¶ 17, 125 N.M. 262, 960 P.2d 350. It does not, however, dispose of the issue of harm to the County. Resolution of that issue would turn on whether the City has the authority to condemn the right of way and pay the County compensation therefor. *See State ex rel. State Highway Comm'n v. City of Albuquerque*, 67 N.M. 383, 355 P.2d 925 (1960) (discussing intergovernmental eminent domain). We refrain from deciding the issue because it would depend on facts that were not made a part of the record below, as the County points out, and because, as a result of the insufficiency in the record, the district court did not have an opportunity to rule on the issue. *See* Rule 12–216(A) NMRA 2000.

**CONCLUSION**

{24} For the foregoing reasons, we reverse and remand with instructions that the district court withdraw the injunction.

{25} **IT IS SO ORDERED.**

WECHSLER and ARMIJO, JJ., concur.